In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
NO. 09-20-00116-CV

**DANIEL V. TRAVIS AND TRAVIS BROTHERS BUILDING
AUTOMATION TEXAS, LLC, Appellants**

**V.**

**TOMMY TRAVIS, Appellee**

On Appeal from the 60th District Court
Jefferson County, Texas
Trial Cause No. B-201,895

## MEMORANDUM OPINION

Daniel V. Travis and Travis Brothers Building Automation Texas, LLC

(collectively, "Appellants") appeal the trial court's order granting Tommy Travis's

motion for traditional summary judgment.[1] In three issues, Appellants complain that

the trial court: (1) abused its discretion in overruling their objections to Tommy's

summary judgment evidence, which constituted harmful error; (2) erred in granting

---

[1]For clarity, we use Daniel Travis and Tommy Travis's first names.

1

summary judgment and involuntarily winding up Travis Brothers Building Automation Texas, LLC ("the Company") as a matter of law; and (3) erred in finding Tommy and Daniel each have a fifty percent ownership interest in the Company as a matter of law. Because genuine issues of material fact remain, we reverse and remand.

## I. BACKGROUND

A. Company Formation and Litigation

In 2007, brothers Daniel and Tommy formed the Company. An Operating Agreement executed by the brothers governed the Company's business. Article 2 of the Operating Agreement provided that "[t]he Members initially shall contribute to the Company capital as described in Exhibit 3 attached to this Agreement. The agreed value of such property and cash is $11,000." It further provided that "the description and each individual portion of this capital contribution is as follows" and shows Daniel providing $6,000 and Tommy providing $5,000. The Operating Agreement allocated the Company's profits and losses to the Members in proportion to each Member's relative capital interest in the Company. According to the Operating Agreement, the Members voted on Managers, and while both brothers were initially named Managers, Daniel was elected Chief Executive Manager ("CEM") and had the "primary responsibility for managing the operations of the Company and for effectuating the decisions of the Managers." The Operating

2

Agreement also provided that "[b]y a vote of the Members holding a majority of the capital interests in the Company as set forth in Exhibit 2, as amended from time to time, shall elect so many Managers as the Members determine[.]"

On June 11, 2018, Tommy filed his Original Petition for Dissolution and Application for Temporary Restraining Order and Injunctive Relief, naming Daniel and the Company as defendants. In his petition, Tommy alleged he and Daniel each had a fifty percent ownership interest, were equal Managers, and that Daniel was appointed CEO. In his petition, Tommy further sought a court order dissolving the Company "because actions by Defendant Daniel Travis has caused and continue to cause substantial damages to the Plaintiff[,]" and "because there is a deadlock within the [C]ompany" between the parties due to discord and distrust for which there is no expectation of resolution. Tommy complained that Daniel attempted to lock him out of the Company, removed him as a signer from their bank account, and reduced his responsibilities by naming him as Fleet Coordinator. Tommy contends that as a Manager, he has the right to be involved in the Company's daily operation, and Daniel attempted to prevent him from doing so. He sought dissolution pursuant to Texas Business Organizations Code section 11.051 and asked the court to supervise the winding up of the Company, appoint a receiver, and appoint an accountant pursuant to section 11.054(3). *See* Tex. Bus. Orgs. Code Ann. §§ 11.051 (listing events requiring winding up of domestic entity), 11.054(3) (outlining court

3

supervision of domestic entity winding up). Tommy also applied for temporary and permanent injunctive relief pursuant to Texas Civil Practice and Remedies Code section 65.011. *See generally* Tex. Civ. Prac. & Rem. Code Ann. § 65.011 (outlining circumstances when a writ of injunction may be granted). Tommy's requested relief included: a) the Company's dissolution; b) appointment of a receiver to carry out the Company's operations during dissolution process; c) appointment of an accountant to determine the appropriateness of the withdrawal of Company funds; d) attorneys' fees; e) costs; and f) temporary injunction. On the same day Tommy filed his petition, the trial court signed a Temporary Restraining Order. Tommy subsequently filed a Motion to Appoint a Receiver.

Appellants answered with a general denial and challenged Tommy's claims he owned fifty percent of the Company. Daniel claimed that the Company's Operating Agreement showed he owned 6/11ths or 54.55% and Tommy owned 5/11ths or 45.45% based on their initial capital contribution. Daniel asserted that because he owned a majority interest in the Company, no deadlock existed in the Company's management, and receivership was not authorized under the circumstances.

B. Summary Judgment Record

On February 24, 2020, Tommy filed his Traditional Motion for Summary Judgment and Request for a Court Appointed Person to Carry Out the Winding Up

4

of the Company.[2] Tommy argued that Texas Business Organizations Code section 11.314 gave the court the jurisdiction to wind up the Company. Specifically, Tommy argued the Code authorizes winding a company up because: 1) the economic purpose

[2]On the same day, Appellants filed an Objection to Entry of Receivership Order, asserting that Daniel claimed a 6/11 or 54.55% ownership in the Company and Tommy owned 5/11 or 45.45% of the Company. In its objection, Appellants argued that the trial court conducted evidentiary hearings on Tommy's Motion to Appoint Receiver on November 2, 2018 and April 4, 2019, at the conclusion of which, the trial court announced it would appoint a receiver "because the Court believed that the management of the [C]ompany was deadlocked[,]" noting it relied on Tommy's testimony that he made nonmonetary contributions that increased his ownership to 50% and the Company's tax returns. The trial court didn't reduce its oral announcement to a written order. Appellants alleged that in December 2019, Tommy "stole a significant amount of money from [the Company]." Appellants then explained in response to Tommy's action, they filed counterclaims to recover the "stolen money." Appellants alleged that in response to the counterclaims, Tommy requested a hearing to enter the order appointing a receiver. In their Objection to Entry of a Receivership Order, Appellants argued that a rehabilitating receiver could be appointed pursuant to Texas Business Organizations Code section 11.404 and that a liquidating receiver could be appointed pursuant to section 11.405. While a deadlock of management could justify appointing a receiver to rehabilitate the Company, it does not authorize a court to appoint a receiver to liquidate a company's assets. Appellants also argued that prior to ordering a company's assets liquidated and appointing a receiver for that purpose under section 11.405, the court must determine "that all other available legal and equitable remedies, including the appointment of a receiver for specific property of the domestic entity and appointment of a receiver to rehabilitate the domestic entity are inadequate." They further contended that Tommy failed to satisfy the elements of appointment of a receiver pursuant to section 11.404 and specifically challenged that a deadlock existed. On February 20, 2020, the trial court conducted another hearing on appointing a receiver. In that hearing, the trial court requested additional briefing on setting a bond and appointing a receiver under sections 11.404 and 11.405. However, instead of proceeding on the question of appointing a receiver, Tommy then filed his Traditional Motion For Summary Judgment and asked the trial court to involuntarily dissolve the Company.

of the Company is likely to be frustrated; 2) defendant's conduct has made it impracticable to carry on business with the defendant; and 3) the defendant's actions made it not reasonably practicable to carry on the Company's business in conformity with the Company's governing documents. *See* Tex. Bus. Orgs. Code Ann. § 11.314. Tommy also requested the court appoint someone to wind up the Company pursuant to section 11.054 of the Texas Business Organizations Code. *See id.* § 11.054.

Tommy's summary judgment evidence included his Original Petition and Application for TRO, a statement from American Express showing charges from July 2013 to March 2015, a federal tax lien notice against the Company from 2017 and 2018 totaling $580,289.19, the Company Operating Agreement, a letter dated May 15, 2018 from Daniel to Post Oak Bank requesting that Tommy be deleted as a person authorized to sign on the account, an email from a former employee explaining why she decided to leave her job, and an email from Daniel to Tommy dated May 17, 2018, regarding his new role as Fleet Coordinator.

Appellants filed their response to the summary judgment motion. The evidence filed with their response included the affidavit of Company Controller Jessie Travis,[3] the Company Operating Agreement, Jessie's CV, Company Reconciliation of Partners' Capital Accounts, and certified copies of federal tax lien

---

[3]Jessie is not related to the brothers. For purposes of clarity we refer to her by her first name.

releases. In their response, they contended there was no evidence to support a statutory winding up and dissolution pursuant to section 11.314. They also argued there was not any competent evidence that the economic purpose of the entity was likely to be unreasonably frustrated, that another owner had engaged in conduct relating to the entity's business that made it impractical to carry on the Company's business, or that it was not reasonably practicable to carry on the entity's business in conformity with the Company's governing documents. In the alternative, Appellants asserted that at a minimum, their summary judgment evidence created fact issues on those questions. For example, Appellants pointed to the Operating Agreement, which shows Tommy contributed $5,000 of the $11,000 startup capital, giving him a 45.45% ownership interest in the Company even though he claims he owns 50% of the Company. They argued Daniel owned a majority interest in the Company and could elect or remove Company managers as he saw fit. As the Company's CEM, the Appellants said Daniel had the authority to make the decisions that he made on the Company's behalf. The Appellants also objected to Tommy's summary judgment evidence, including the petition for dissolution and TRO Tommy filed, arguing that the pleadings Tommy filed did not constitute summary judgment proof. They also objected to the American Express statement that shows Daniel's expenditures and the former employee's email discussing why she left the Company, relying on Texas Rules of Evidence 802, 901, and 902.

On March 19, 2020, the day before the summary judgment hearing, Tommy filed a reply with exhibits and supplemental reply with exhibits. These replies incorporated summary judgment evidence already before the court, including Jessie's affidavit.[4] The only new evidence Tommy included with his supplemental reply was a copy of the transcript of the trial court's April 4, 2019 evidentiary hearing on his motion to appoint a receiver and hearing exhibits. Tommy did not request leave to file this evidence. Appellants filed their Motion to Strike Tommy's

---

[4]Tommy objected to Jessie's affidavit on two grounds, complaining it was conclusory and asserting she was not an expert qualified to provide the opinions she expressed in the affidavit. The trial court never ruled on Tommy's objections. Tommy's objections lack merit because the affidavit is neither conclusory, nor does it contain the unsupported *ipse dixit* of an expert witness. Jessie based her affidavit on her personal knowledge as the Company's Controller. She outlines her qualifications in her affidavit and supports the statements she makes in it with the documents she relied upon, including the Company's Operating Agreement, the account reconciliations, and the IRS release of liens. Jessie explained the Company's records she reviewed did not show any additional recorded capital contributions by Tommy in the form of cash or property. She explained why she offered the opinions that are in the affidavit, citing the Company's documents. Jessie also discussed her personal knowledge of the Company's operations, operations with which she was familiar given her role as Controller and her job duties in that role. *See* Tex. R. Civ. P. 166a(f) (requiring affidavits to be made on personal knowledge, set forth facts as would be admissible in evidence, and show affiant's competency to testify on the matters included). When dealing with an expert, "the affidavit must explain the link between the facts the expert relied upon and the opinion reached." *Starwood Mgmt., LLC v. Swaim*, 530 S.W.3d 673, 679 (Tex. 2017) (citations omitted). Appellants argue that Jessie's affidavit was not offered as an expert but rather as the Controller with knowledge of the Company's operations and finances. Here, Jessie's conclusions are supported by demonstrable and reasoned bases and a subjective comment in an affidavit, without more, does not render the affidavit conclusory as a whole. *See id.* at 680.

replies and this evidence as untimely. The trial court overruled all objections to the summary judgment evidence and denied the Motion to Strike.

On March 20, 2020, the trial court held a hearing on the motion for summary judgment. On March 23, 2020, the trial court signed on order granting Tommy's Traditional Motion for Summary Judgment and Request for a Court Appointed Person to Carry Out the Winding Up of the Company. The trial court found that Tommy and Daniel each held a 50% ownership interest in the Company and "the members are unable to jointly agree on any business matters or management of the Company's affairs, the members are unable to break the deadlock, and, as a result, Court ordered winding up of the Company is necessary and proper."[5]

## II. STANDARDS OF REVIEW

We review a trial court's ruling on objections to summary judgment evidence under an abuse of discretion standard. *See Starwood Mgmt., LLC v. Swaim*, 530 S.W.3d 673, 678 (Tex. 2017) ("We review the rendition of summary judgments de novo. But we review a trial court's decision to exclude evidence for an abuse of discretion.") (citations omitted). A trial court abuses its discretion if it acts without reference to any guiding rules or principles. *Carpenter v. Cimarron Hydrocarbons*

---

[5]The trial court's summary-judgment order did not dispose of Appellant's counterclaims. Subsequently, Appellants filed a notice of nonsuit of these claims. The trial court thereafter signed on order dismissing these claims, making the summary-judgment order final and appealable.

9

*Corp.*, 98 S.W.3d 682, 687 (Tex. 2002). To constitute reversible error, an appellant must show that the trial court's substantive ruling was erroneous and that it was harmful, meaning it was calculated to cause and probably did cause the rendition of an improper judgment. *See City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex. 1995); *see also* Tex. R. App. P. 44.1(a)(1).

We review a trial court's decision to grant summary judgment de novo. *See Shell Oil Co. v. Writt*, 464 S.W.3d 650, 654 (Tex. 2015) (citation omitted). We view the evidence in the light most favorable to the nonmovant. *Id.* (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005)). In doing so, we indulge every reasonable inference and resolve any doubts against the motion. *See City of Keller*, 168 S.W.3d at 824. "Undisputed evidence may be conclusive of the absence of a material fact issue, but only if reasonable people could not differ in their conclusions as to that evidence." *Buck v. Palmer*, 381 S.W.3d 525, 527 (Tex. 2012) (citation omitted). When a plaintiff moves for summary judgment on its claim, it must establish its right to summary judgment by conclusively establishing all elements of its cause of action as a matter of law. *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999). The movant has the burden to show with competent summary-judgment evidence, that no genuine issue of material fact exists, and he is entitled to summary judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). Once a

10

plaintiff meets this burden, the burden shifts to the nonmovant to raise a genuine issue of material fact precluding summary judgment. *Smiley Dental-Bear Creek, P.L.L.C. v. SMS Financial LA, L.L.C.*, No. 01-18-00983-CV, 2020 WL 4758472, at *4 (Tex. App.—Houston [1st Dist.] Aug. 18, 2020, no pet.) (mem. op.). Evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions considering all the summary judgment evidence. *Goodyear Tire & Rubber v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007). When the trial court fails to specify the grounds on which it granted summary judgment, we must affirm if any of the summary judgment grounds are meritorious. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872–73 (Tex. 2000) (citation omitted).

## III. ANALYSIS

A. Issue One: Objections to Summary Judgment Evidence

In their first issue, Appellants contend that the trial court abused its discretion in overruling their objections to Tommy's summary judgment evidence. Assuming without deciding that this evidence was admissible, and the trial court properly considered it, Tommy still failed to prove he was entitled to judgment as a matter of law, as explained more fully below. Genuine issues of material fact exist regarding Tommy's ownership share in the Company and whether Tommy is entitled to have the Company involuntary dissolved, thus precluding summary judgment on this ground.

11

B. Issue Two: Texas Business Organizations Code § 11.314

In their second issue, Appellants contend that Tommy failed to conclusively establish his entitlement to summary judgment on his claim seeking to dissolve the Company under section 11.314. Section 11.314 of the Texas Business and Commerce Code permits a district court to order a Company wound up and the partnership terminated "if the court determines" that at least one of three exigent circumstances listed in the statute exists. *CBIF Ltd. P'ship v. TGI Friday's Inc.*, No. 05-15-00157-CV, 2017 WL 1455407, at *9 (Tex. App.—Dallas Apr. 21, 2017, pet. denied) (mem. op.) (quoting Tex. Bus. Orgs. Code Ann. § 11.314). Specifically, the statute provides

> A district court in the county in which the registered office or principal place of business in this state of a domestic partnership or limited liability company is located has jurisdiction to order the winding up and termination of the domestic partnership or limited liability company on application by an owner of the partnership or limited liability company if the court determines that:
> (1) the economic purpose of the entity is likely to be unreasonably frustrated.
> (2) another owner has engaged in conduct relating to the entity's business that makes it not reasonably practicable to carry on the business with that owner; or
> (3) it is not reasonably practicable to carry on the entity's business in conformity with its governing documents.

Tex. Bus. Orgs. Code Ann. § 11.314. "Dissolution proceedings are equitable in nature and contested facts concerning a basis for dissolution are for the jury." *CBIF Ltd. P'ship*, 2017 WL 1455407, at *9 (citing *M.R. Champion, Inc. v. Mizell*, 904

12

S.W.2d 617, 618 (Tex. 1995)). At least one other appellate court has determined that a case involving dissolution pursuant to 11.314 "presented contested fact issues that had to be resolved by the jury before the court could determine whether dissolution was warranted." *Id.* The fact that there are only two members and they disagree does not mean there is a deadlock where one owns a majority interest. *See, e.g., Shannon Med. Ctr. v. Triad Holdings III, L.L.C.*, 601 S.W.3d 904, 917 (Tex. App.—Houston [14th Dist.] 2019, no pet.) (discussing section 11.314 in partnership context and determining appellant failed to conclusively establish it was not reasonably practicable to carry on the entity's business in conformity with the governing documents). Further, an entity can carry on its business in accordance with its governing documents despite litigation between the members. *See id.* (noting same).

1. Economic Purpose of the Company Likely to be Frustrated

In his Traditional Motion for Summary Judgment, Tommy argued that the economic purpose of the Company is likely to be frustrated. *See* Tex. Bus. Orgs. Code Ann. § 11.314(1). Specifically, Tommy asserted that Daniel created a toxic work environment, used funds for inappropriate entertainment and housing, allowed a federal tax lien to be filed, and attempted to lock Tommy out of the Company. In support of this, he points to an American Express statement with charges between 2013 and 2015 purporting to show the inappropriate charges, a federal tax lien, and a former employee's email complaining of Daniel. However, Jessie's affidavit and

the documents that support it create a fact issue on whether the Company's purpose is likely to be frustrated. As a CPA, Jessie's affidavit shows that based on her duties, qualifications, and familiarity with the financial conditions and operations of the Company, she was qualified to express opinions about the Company's operations. She averred that she interacts with the Company's employees and customers and opined that the Company has sought and obtained additional profitable projects. Jessie swore that the Company is current on all its federal and state taxes, currently the Company has no tax liens against its property, and she attached certified copies of the releases of tax liens to her affidavit.

In her affidavit, Jessie attached "a true and correct copy" of the Company Operating Agreement and explained that based on that agreement, the total initial capital contribution was $11,000. Of that total, Tommy contributed $5,000 while Daniel contributed $6,000. She explained that Daniel owned 6/11 or 54.55% and Tommy owned 5/11 or 45.45% of the Company, and Company records do not reflect or show any additional capital contributions of cash or property, testimony that contradicts Tommy's claim asserting he contributed additional capital consisting of a truck and tools. The testimony of the Company's prior Controller, Gina Crisci, from the April 4 hearing also contradicts Tommy's claims that he provided additional capital to the Company.

Appellants both signed the Company's Operating Agreement, which Appellants included in their summary judgment evidence. Article 2 of the Company Operating Agreement outlined the Members' initial capital contributions and stated the "agreed value of such property and cash is $11,000." It further showed Daniel providing $6,000 and Tommy providing $5,000. The Operating Agreement provided that the Members' interests would be determined by their capital contributions as set forth in the agreement, which established Daniel owned a 6/11 interest, and Tommy owned a 5/11 interest. Tommy's claim that he owned 50% per income tax filings was contradicted not only by the plain language of the Operating Agreement, but by Jessie's affidavit. Jessie averred that in her role, she reviewed these documents, performed a reconciliation of the capital accounts, determined that the federal tax filings showing 50-50 ownership were erroneous, and that the tax filings were contrary to the Operating Agreement.

While the summary judgment evidence does show the brothers have disputes regarding issues involving the Company's management, genuine issue of material fact exist about the percentage ownership interests each owner has in the Company. If Daniel owns the 54.55% that he claims as reflected by the Company Operating Agreement and by Jessie's testimony, he holds a majority ownership interest in the Company. If that is the case, there would not be a deadlock. Further, if it is determined that Daniel is the majority owner in a trial, he would have the right as

the owner of the largest interest in the Company to exercise his vote to remove or add Managers, including Tommy, under Article 4.1 of the Operating agreement.

Tommy argued Daniel's actions harmed the Company, and he alleged that Daniel attempted to lock him out of the business. As evidence to support these claims, Tommy provided American Express statements, a former employee's email, federal tax liens, documents showing he was appointed to coordinate the Company's fleet, and documents showing he was removed as an authorized signer from the Company bank accounts. Even if admissible, the American Express statement shows charges from three to five years before the lawsuit was filed. There was no conclusive evidence that those charges were relevant to the issues in the suit. In her affidavit, Jessie averred that any charges that were not legitimate business expenses are "treated as distributions to the partner who made the charge or received the benefit of the expenditure." Moreover, apart from generally being unhappy, the former employee's email likewise did not provide any conclusive evidence that the economic purposes of the Company were likely frustrated, a claim the Appellants challenged in any event with the summary judgment evidence they filed. Jessie 's affidavit and releases of tax liens show that issues as to past taxes owed had been resolved. Further, Jessie explained that the Company was viable and had good customers, the Company was current on its taxes, and the capital account reconciliation for the Company showed the Company has over $250,000 in equity.

16

According to Jessie's affidavit, given the Company's financial condition, operations, and "its ability to seek and regularly obtain additional profitable and quality projects and work, the company is economically viable, and its economic purpose is not likely to be frustrated."

Viewing the evidence in the light most favorable to the nonmovant, we conclude a genuine issue of material fact existed regarding whether the Company's economic purpose was likely to be frustrated. *See JLB Builders, L.L.C. v. Hernandez*, 622 S.W.3d 860, 864 (Tex. 2021) (outlining movant's burden in traditional motion for summary judgment to show no genuine issue of material fact remains); *Writt*, 464 S.W.3d at 654; *see also* Tex. R. Civ. P. 166a(c) (same); Tex. Bus. Orgs. Code Ann. § 11.314(1) (providing circumstance warranting involuntary winding up).

> 2. An Owner Engaged in Conduct Relating to the Entity's Business that Makes it Not Reasonably Practicable to Carry On the Business with that Owner

Appellants further contend that Tommy failed to conclusively establish that Daniel engaged in conduct relating to the entity's business that makes it not reasonably practicable to carry on with Daniel as a matter of law. *See* Tex. Bus. Orgs. Code Ann. § 11.314(2). We agree. In his motion for summary judgment, Tommy argued it was not practicable to carry on the business, relying on the American Express statement, which shows what he asserted were inappropriate

17

expenditures of Company funds and correspondence proving that Daniel removed Tommy from the account at the Company's bank, reduced Tommy's role within the Company, and unilaterally reduced Tommy's salary. Appellants' evidence, however, raises fact issues on Tommy's claims. In Jessie's affidavit, she explained how non-business or personal expenses are treated as distributions by the individual who charged an expense to a credit card. Crisci's affidavit is similar, as she explained that when the person charges something to the Company that is not a legitimate business expenses, the person ends up paying for the item personally. Likewise, Daniel testified that the Company's policies had changed, and the Company no longer entertains customers in ways like those reflected by the statements the Company has received in the past from American Express.

The Operating Agreement shows that based on the initial capital contributions, Daniel held the majority interest and accordingly could have removed managers by exercising his majority vote. Moreover, the evidence shows that Daniel as the CEM was responsible for the day-to-day operations of the Company. Jessie outlined the payments Tommy continued to receive annually despite not currently providing any services to the Company. Likewise, in her affidavit, Jessie states the Company carried on business and that "Dan Travis is not engaging in any conduct relating to the company's business that makes it reasonably impractical to carry on[.]" To support her opinion, Jessie's cites the Company's improved financial

18

condition since Tommy filed the suit and notes the Company is operating profitably. Viewing the evidence in the light most favorable to the nonmovant, we conclude that a genuine issue of material fact exists regarding whether Daniel's conduct has made it impracticable to carry on the business with Daniel, thus precluding summary judgment on this ground. *See JLB Builders*, 622 S.W.3d at 864; *Writt*, 464 S.W.3d at 654; *see also* Tex. R. Civ. P. 166a(c); Tex. Bus. Orgs. Code Ann. § 11.314(2).

### 3. Not Reasonably Practicable to Carry on the Entity's Business in Conformity with its Governing Documents

Under section 11.314(3), the final exigent circumstance that would allow for involuntary judicial winding up of the entity is if "it is not reasonably practicable to carry on the entity's business in conformity with its governing documents." Tex. Bus. Orgs. Code Ann. § 11.314(3). Appellants likewise argue that Tommy failed to establish his right to summary judgment under this final statutory circumstance that would allow for involuntary dissolution. In his summary judgment motion, Tommy points to the Operating Agreement and contends that as a Manager, he has the power to act on behalf of the Company and to control and manage the Company. He contends that the Operating Agreement lists both brothers as Managers and given the trial court's prior finding of 50% ownership by each member, Daniel's attempts to assume full control of the Company runs "afoul" of the Company's Operating Agreement. Tommy asserts that the "Parties have become deadlocked and are unable to jointly agree on any business matters or the management of the Company, which

19

is the direct result of [Daniel's] repeated attempts to lock [him] out." Therefore, he argues he is entitled to dissolution under section 11.314(3). *See id.*

Tommy's argument that he is entitled to dissolution based on this subsection necessarily hinges on the trial court's finding that the brothers each own a 50% interest. However, as discussed above, the Operating Agreement appears to show that the Members' initial capital contributions dictated their ownership interest, and Jessie's affidavit supports this. If true, Daniel owns 6/11 interest, and Tommy owns a 5/11 interest. As the Member owning the majority interest, Daniel would have the right to vote Managers in or out as he sees fit. Further, Jessie averred that the Company continued to operate in accordance with its Operating Agreement and delineated the reasons why. At a minimum, Appellants' evidence establishes that a genuine issue of material fact exists precluding summary judgment under section 11.314(3). *See* Tex. R. Civ. P. 166a(c).

The trial court improperly granted summary judgment based upon Texas Business Organizations Code section 11.314, because genuine issues of material fact exist as to whether: 1) the economic purpose of the Company is likely to be unreasonably frustrated; 2) Daniel has engaged in conduct relating to the Company's business that makes it not reasonably practicable to carry on the business with him; and 3) it is not reasonably practicable to carry on the Company's business in

conformity with its governing documents. *See* Tex. Bus. Orgs. Code Ann. § 11.314(1) – (3). We sustain Appellants' second issue.

C. Issue Three: Trial Court's Finding as to Members' Ownership Interest

To support its order of dissolution, the trial court found that "the members are unable to jointly agree on any matters or the management of the Company's affairs, [and] the members are unable to break the deadlock." Appellants again disputed any deadlock existed. While Tommy contended that he and Daniel each owned a 50% interest in the Company, as explained above, the Operating Agreement undercuts this assertion. "The profits and losses of a limited liability company shall be allocated to each member of the company on the basis of the agreed value of the contributions made by each member, as stated in the company's records required under Section 101.501." *Id*. § 101.201. LLCs are required to keep a written statement of "the amount of a cash contribution and a description and statement of the agreed value of any other contribution made or agreed to be made by each member" and "the dates any additional contributions are to be made by a member[.]" *Id.* § 101.501(a)(7)(A)–(B).

Even assuming without deciding the trial court properly considered testimony from the hearing on April 4, 2019 of Tommy and Daniel's sister that she participated in a family meeting where her brothers discussed forming the Company and that they intended to own the business 50-50, this evidence did not conclusively establish

21

the shares the parties owned in the Company given the terms of the Operating Agreement and testimony that Daniel's capital contribution of $6,000 made him the majority owner. During the same hearing, Daniel testified that their father gave each brother $5,000 to start the business, but he contributed an extra $1,000 in case a dispute arose between the owners of the business. Daniel said that Tommy saw "the paper" with these amounts and "signed it." Daniel explained Tommy expected a 60-40 or 80-20 split, and Tommy did not object to Daniel owning five or six percent more of the Company's shares. Additional documents introduced in the hearing included federal tax documents, which show each brother owns 50% of the Company.

The summary judgment evidence includes the testimony of Crisci. Crisci disputed Tommy owns the Company equally with Daniel and disputed that Tommy contributed additional capital based on providing the Company tools and a truck. Crisci testified errors were made on the Company's federal tax filings, specifically where the filings reflect the brothers each own 50% of the Company as the Company's accountant made a mistake. Crisci explained the CPA firm responsible for preparing the Company's tax documents made the error because the accounting firm was never given a copy of the Operating Agreement and instead assumed the brothers each owned 50% shares in the Company. In its April 4, 2019 ruling, the trial court explained that it relied on federal tax returns in finding that each brother

22

held a 50% interest in the Company and on Tommy's testimony that he contributed additional capital to the Company in the form of a truck and tools.

At the summary judgment hearing and in their response to Tommy's motion for summary judgment, Appellants disputed evidence of 50-50 ownership and deadlock with Crisci's testimony and Jessie's affidavit. Crisci and Jessie testified that the federal tax documents were erroneous and why, and each explained the ownership interests based on the Company's Operating Agreement. Both also testified that no Company records showed that Tommy made additional capital contributions to the Company for providing the Company with either additional cash or property. *See id.* §§ 101.201, 101.501(a)(7)(A)–(B).

Viewing the summary judgment evidence in the light most favorable to the nonmovant, we conclude a genuine issue of material fact exists regarding the shares each brother owns in the Company. *See City of Keller*, 168 S.W.3d at 824. Tommy failed to meet his burden to establish that no genuine issue of material fact remained. *See* Tex. R. Civ. P. 166a(c); *JLB Builders*, 622 S.W.3d at 864. Simply put, the trial court erred by finding that as a matter of law each brother owns 50% of the Company and that the equal ownership resulted in a deadlock that made a "winding up of the [C]ompany" necessary and proper" under section 11.314 of the Texas Business Organizations Code. We sustain issue three.

23

## IV. CONCLUSION

Viewing the evidence in the light most favorable to the nonmovant, we conclude genuine issues of material fact remain. Accordingly, we reverse the trial court's order granting summary judgment and remand the matter to the trial court.

REVERSED AND REMANDED.

_____
W. SCOTT GOLEMON
Chief Justice

Submitted on November 12, 2021
Opinion Delivered April 21, 2022

Before Golemon, C.J., Kreger, and Horton, JJ.